

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 6, 2015**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 14-35333-BJH |
| CURTIS ANTHONY WILLIAMS | § | (Chapter 13) |
| and | § | |
| BEVERLY K. WILLIAMS | § | RELATED TO DKT. 30 |
| | § | |
| DEBTORS. | § | |
| | § | |

# MEMORANDUM OPINION AND ORDER

This dispute arose out of a foreclosure sale that took place one month after Curtis and Beverly Williams (the "**Debtors**") filed their joint bankruptcy petition to commence this case. The buyer at the foreclosure sale, American Homes 4 Rent Properties Eight, LLC, ("**AH4R**") filed this motion to retroactively annul the automatic stay due to what it characterized as bad faith by the Debtors. For the reasons discussed in this Memorandum Opinion and Order, the evidence presented at the preliminary hearing is insufficient to support retroactive relief from the automatic stay, and there is a reasonable

likelihood that the Debtors will prevail at a final hearing. This matter shall thus proceed to a final hearing on the merits of retroactive relief from the stay.

I.       FACTUAL BACKGROUND

The Debtors executed a deed of trust in their home, located at 9505 Palm Valley Drive in McKinney, Texas (the "**Property**"), in favor of Countrywide Bank, FSB ("**Countrywide**") on March 20, 2008, thereby securing a promissory note held by Countrywide in the principal amount of $163,415.00. The Grantor of the deed of trust was defined as "Curtis Williams, a married person," and both Curtis and Beverly signed the deed of trust. Countrywide subsequently merged into Bank of America, National Association, which assigned its beneficial interest in the deed of trust to Bayview Loan Servicing, LLC on July 18, 2013. Bayview Loan Servicing, LLC transferred its interest in the deed of trust to Bayview Dispositions IIIA, LLC on July 9, 2014, which in turn transferred its interest to American Mortgage Investment Partners Fund I Trust ("**AMIP**") one week later.

AMIP engaged FCI Lender Services, Inc. ("**FCI**") to service the loan. FCI sent a letter to Curtis dated July 23, 2014 that notified him of the change in servicer, explained that FCI was acting on behalf of AMIP, and provided FCI's contact information. According to FCI's letter, the loan balance had increased to $228,106.13, which included $160,287.95 in principal and $45,304.40 in accrued interest.

The law firm of Robertson Anschutz Vetters of Houston, Texas ("**RAV**") sent a demand letter to Curtis dated September 23, 2014, seeking immediate payment of $104,594.88, of which $81,814.71 was the amount of unpaid installments. RAV explained that the loan was in default and that it was collecting the debt on behalf of AMIP. On December 2, 2014, RAV conducted a foreclosure sale on the Property on AMIP's behalf. The buyer of the Property at the foreclosure sale was the movant, AH4R, which apparently acquired the property for $232,201.64.

On November 3, 2014, after the demand letter was sent but before the foreclosure took place, the Debtors filed this joint petition under chapter 13 of the Bankruptcy Code. Both of the Debtors had filed individual chapter 13 cases in the Eastern District of Texas before filing this joint case in the Northern District of Texas. However, only one of those prior cases was disclosed on the petition in this case. Curtis

filed case number 10-41450 on May 3, 2010, and this case was dismissed on September 7, 2012 for failure to make plan payments. Beverly filed case number 13-42662 on November 2, 2013, and this case was dismissed on September 16, 2014, with prejudice, barring Beverly from being a debtor in a bankruptcy case for 120 days. This joint petition was filed on November 3, 2014, less than two months after Beverly's prior case was dismissed and in violation of the dismissal order entered in her prior case. Beverly filed a motion to voluntarily dismiss herself from this joint case on April 1, 2015, which motion remains pending but will be granted by separate order following the issuance of this Memorandum Opinion and Order.

On May 5, 2015, the buyer at the foreclosure sale, AH4R, filed its First Amended Motion for Relief as ECF No. 30 (the "**Motion**").[1] The Motion was supported by an Affidavit in Support, ECF No. 31 ("**AH4R Aff.**"), which was signed by an officer of AMIP and to which seven exhibits were attached.[2] In response to the Motion, the Debtors filed their Debtors' Response to Motion for Relief from Stay as ECF No. 32 (the "**Response**"). It, in turn, was supported by Debtor's Affidavit Concerning Motion to Lift Stay, ECF No. 33 ("**DR Aff.**"), signed by Curtis. A preliminary hearing on the Motion was originally set for May 11, 2015 and was reset to June 2, 2015 at the parties' request. At the conclusion of the preliminary hearing, the Court took the Motion under advisement.

The Motion argues that this joint bankruptcy case was filed in bad faith to stop AMIP's foreclosure. In the Motion, AH4R asks the Court to retroactively annul the automatic stay and seeks *in rem* relief precluding an automatic stay from arising to protect the Debtors' (or anyone else's) interest in the Property in any future bankruptcy case. In the alternative, AH4R seeks prospective relief from the automatic stay because the Debtors have failed to make any payments to AMIP or FCI.

The Court notes several anomalous features of this dispute. For example, AMIP is the lender under the deed of trust, but AH4R is the party requesting stay relief. Though AMIP appeared at the preliminary hearing on the Motion through counsel and its officer signed AH4R's affidavit in support of the Motion,

---

[1] The original motion was filed on April 14, 2015 at ECF No. 25.
[2] Pursuant to our local rules, evidence presented at preliminary hearings on motions for relief from the automatic stay is by affidavit only. N.D. Tex. L.B.R. 4001-1(e)(1).

AMIP did not join in the Motion or file its own request for relief. Moreover, the foreclosure sale deed indicates that AH4R purchased the property "by way of credit against the unpaid balance owed" on the note secured by the deed of trust, indicating a credit bid. AH4R Aff Exh. 7. But there is no evidence that AH4R purchased the note from AMIP and thus it is unclear how AH4R had any right to credit bid at the foreclosure sale. In addition, when asked by the Court at the preliminary hearing if AH4R was a cash purchaser at the foreclosure sale, AH4R's counsel responded that it was. So, whether counsel was in error or whether the foreclosure deed has an incorrect recital is unclear based on the record made at the preliminary hearing on the Motion.

Other oddities appear. For example, why was Beverly's prior case not disclosed on the Debtors' joint petition? Debtors' counsel explained that his failure to discover Beverly's prior bankruptcy case and bar order was an accident on his part, then pointing out that the motion to voluntarily dismiss Beverly from this joint case had been filed to correct the error prior to the filing of the Motion by AH4R. Debtors' counsel also explained that this joint case was filed in the Northern District of Texas because Curtis works in Dallas, even though his domicile and the Property are located in Collin County in the Eastern District of Texas. Furthermore, the creditor matrix filed with this joint petition did not include AMIP, FCI, or Bayview Loan Servicing, resulting in those entities not receiving notice of the Debtors' bankruptcy filing or the meeting of creditors, although the clerk's office sent electronic notice of this bankruptcy case and the meeting of creditors to Bank of America and notice by first class mail to RAV, the law firm that had sent a demand letter to the Debtors prepetition and that ultimately conducted the foreclosure sale on behalf of AMIP. Certificate of Mailing Notice of First Meeting of Creditors, ECF No. 9, at 3. Through counsel, the Debtors explained that this was yet another inadvertent mistake.

## II. JURISDICTION

The district court of the Northern District of Texas has subject matter jurisdiction over the Debtors' underlying joint bankruptcy case pursuant to 28 U.S.C. § 1334, and this Court has authority to hear and determine motions to annul the automatic stay pursuant to 28 U.S.C. § 157(a), (b)(1), and (b)(2)(G) and the

Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in the Northern District of Texas on August 3, 1984.

### III. ANALYSIS

To decide the Motion, the Court must first consider whether the automatic stay was in effect and stayed AMIP's foreclosure sale given the order precluding Beverly from being a debtor in bankruptcy on the petition date. The short answer is yes, the automatic stay was in effect for the reasons explained below.

The filing of a bankruptcy case creates an estate that includes all property interests of the debtor. 11 U.S.C. § 541(a). "[A]ny act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is immediately and automatically stayed by operation of statute. 11 U.S.C. § 362(a)(3).

The automatic stay does not protect against an act to enforce a lien against real property "if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title." 11 U.S.C. § 362(b)(21)(B). If Beverly had filed her own case, therefore, the automatic stay would not have protected her from a foreclosure of the Property.

Regardless, the order barring Beverly from filing another bankruptcy case did not prevent Curtis from filing a bankruptcy case and does not invalidate the automatic stay as to Curtis. Bankruptcy courts analyze each debtor separately for the purposes of the automatic stay. *See In re Haisley*, 350 B.R. 48, 50–51 (Bankr. E.D. La. 2006); *see also In re Stancil*, 473 B.R. 478, 483 (Bankr. D.D.C. 2012) (holding that the automatic stay arose in a joint case filed by two debtors who were not spouses, in violation of 11 U.S.C. § 302, where one of the debtors had been barred from filing a case). In *Haisley*, a creditor sought a determination that the automatic stay had not gone into effect due to Mr. Haisley's multiple filings and bar order. The court found that although Mr. Haisley was ineligible to be a debtor in the joint case, the automatic stay as to Mrs. Haisley was unaffected by her husband's filings and thus the stay remained in effect as to her.

So, because Curtis was not subject to a bar order, the automatic stay was in effect when this joint case was filed, at least as to Curtis, and remained in effect when the foreclosure sale took place notwithstanding the bar order against Beverly. Accordingly, AMIP's foreclosure sale was and is invalid by operation of the stay unless this Court exercises its power under 11 U.S.C. § 362(d)[3] and retroactively annuls the stay. *In re Jones*, 63 F.3d 411, 412 (5th Cir. 1995).[4]

Next, the Court will consider whether AH4R has standing to seek the stay relief it requests in the Motion. At the preliminary hearing on the Motion, Debtors' counsel argued that AH4R does not have standing because it was the purchaser at a foreclosure sale made invalid by the automatic stay, not a creditor of the Debtors.

Only a "party in interest" may request relief from the automatic stay. 11 U.S.C. § 362(d); *see* note 2, *supra*. "The determination of status as a party in interest under section 362(d) must be determined on a case by case basis with reference to the interest asserted and how said interest is affected by the automatic stay." *In re Woodberry*, 383 B.R. 373, 378 (Bankr. D.S.C. 2008) (internal quotation marks omitted); *see also In re Bushnell*, 469 B.R. 306, 309 (B.A.P. 8th Cir. 2012) (citing *Woodberry* and collecting other cases); *In re Cruz*, 516 B.R. 594, 602 (B.A.P. 9th Cir. 2014).

As noted above, AH4R's interest in the Property is directly affected by the automatic stay. The foreclosure sale is invalid by operation of the automatic stay unless this Court grants retroactive relief, so AH4R is a party in interest entitled to seek relief under § 362(d).

---

[3] "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay— (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d).

[4] The Fifth Circuit has used the word "voidable" to describe acts in violation of the automatic stay, eschewing the word "void" because § 362(d) permits the bankruptcy court to retroactively annul the stay on the request of a party in interest. *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990). Put simply, to the Fifth Circuit, voidable meant invalid until validated. But in Texas, a voidable act is as an act that "operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." *Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942). Thus, in Texas, voidable means valid until annulled.

The Fifth Circuit acknowledged and resolved the inconsistency in *Jones*, explaining that "[i]t is the effect of the stay *itself* which is voidable, subject to the broad discretion afforded a bankruptcy judge under section 362." 63 F.3d at 412 n.3. The Sixth Circuit joins the Fifth Circuit in finding "void" to be inappropriate in this context, and proposes "invalid" as the most precise term for acts in violation of the automatic stay. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993); see also Collier on Bankruptcy ¶ [362.07] (Alan N. Resnick & Henry J. Sommer eds.,16th ed.) (suggesting "invalid" as the proper term).

However, were the Court to deny AH4R retrospective relief from the automatic stay, the Court cannot grant it prospective relief from the automatic stay under § 362(d)(1) due to lack of adequate protection of another party's interest in the property. In short, AH4R lacks standing to seek such relief prospectively as it has no interest in the Property under this circumstance and no relationship to the Debtors. While AMIP could seek prospective relief from the automatic stay under this circumstance, it has not chosen to do so—at least not yet.

AH4R attempts to support its claim for prospective relief from the automatic stay with the following statement in its affidavit in support of the Motion: as of May 4, 2015, "neither FCI nor AMIP have received any mortgage payments from Curtis Williams." AH4R Aff. ¶ 12. And, while cause for relief from the automatic stay on the request of a party in interest includes "the lack of adequate protection of an interest in property of *such party in interest*," § 362(d)(1) (emphasis added), without retrospective relief from the stay in its favor, AH4R does not have an interest in the Property to be protected because AMIP's foreclosure sale was invalid and transferred no interest in the Property to AH4R. Lack of adequate protection of AMIP's interest in the Property does not entitle AH4R to prospective relief.

In any event, AH4R's request for *in rem* relief from the automatic stay is improper. Even assuming that the automatic stay is retroactively annulled following the final hearing on the Motion, the Court cannot grant *in rem* relief from the automatic stay to AH4R under § 362(d)(4).[5] By its plain text, relief under § 362(d)(4) against a parcel of real property is only available to "a creditor whose claim is secured by an

---

[5]  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
    (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
    (B) multiple bankruptcy filings affecting such real property.
11 U.S.C. § 362(d)(4).

In 2010, Congress amended 11 U.S.C. § 362(d)(4) to change the standard from the conjunctive "delay, hinder, and defraud" to the disjunctive "delay, hinder, or defraud." Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, § 2(a)(6)(C), 124 Stat. 3557, 3559 (2010). Despite the name of the act, this was a substantive change to the Bankruptcy Code. Following the amendment, the standard for *in rem* relief was not as high because a creditor must only show one of the statutory attributes of the debtor's scheme, not all three. *In re Tejal Inv., LLC*, 2012 Bankr. LEXIS 5760, *15 (Bankr. D. Utah Dec. 12, 2012).

interest in such real property." 11 U.S.C. § 362(d)(4); *see, e.g.*, *In re Gonzalez*, 456 B.R. 429, 442 (Bankr. C.D. Cal. 2011) (Wallace, J.) (denying *in rem* relief in part because the movant, a purchaser at a trustee sale, was not a creditor with a claim secured by an interest in the property). Were the Court to grant retrospective relief from the automatic stay to AH4R, and assuming AMIP's foreclosure sale was valid under state law, AH4R would own the Property outright, not be a creditor whose claim is secured by an interest in the Property.

The Court will therefore turn to the merits of the only relief AH4R could potentially be granted: retroactive relief from the automatic stay. Whether to annul the stay is an equitable determination. *Jones*, 60 F.3d at 413 n.5. Courts typically examine whether the creditor had actual knowledge of the bankruptcy filing and whether there was any "unreasonable behavior" by the debtor. *See id.* at 413 n.6; *In re Pinetree, Ltd.*, 876 F.2d 34, 37 (5th Cir. 1989) (annulling the stay despite proper notice of the bankruptcy case to the mortgage servicer who failed to notify the lender); *see also In re Soares*, 107 F.3d 969, 977 (1st Cir. 1997) ("[D]ebtors who act in bad faith may create situations that are ripe for retroactive relief."). Courts also consider the impact on innocent third parties, whether failing to annul the stay would do anything other than add redundancy to the foreclosure process, and whether a debtor with notice of the foreclosure sale took steps to assert the automatic stay and prevent the sale. *See, e.g.*, *Pinetree*.

On the evidence presented at the preliminary hearing, the Court cannot find that the equities favor annulling the automatic stay retroactively. Though AMIP had no actual notice of the Debtors' bankruptcy filing, notice of the filing was sent to RAV, the law firm that conducted the foreclosure sale on AMIP's behalf. Meanwhile, based on the evidence presented at the preliminary hearing on the Motion, the circumstances surrounding the filing of this joint bankruptcy petition do not rise to the level of unreasonable behavior or bad faith sufficient to justify annulling the stay retroactively. It is true that both Debtors signed a petition that omitted Beverly's prior bankruptcy case, but no evidence has been presented to date that they did so intentionally. *Cf. In re Bright*, 338 B.R. 530, 537–38 (B.A.P. 1st Cir. 2006) (stay annulled due in part to egregious misstatements in petition and failure to disclose assets on schedules). The Debtors have not transferred interests in the Property of which the creditor was unaware. *Cf. Pinetree*, 876 F.2d at 37

(stay annulled where the debtor held merely unrecorded title in property unenforceable against the foreclosing creditor). Though venue of a bankruptcy case is not proper in a district solely due to a debtor's employer's location in that district, 28 U.S.C. § 1408(1),[6] improper venue is not, by itself, bad faith. *Cf. In re Steeley*, 243 B.R. 421, 425 (Bankr. N.D. Ala. 1999) (Cohen, J.) (debtor's sixth bankruptcy petition, filed in improper venue, was filed in bad faith where the debtor admitted she hoped to escape prior court's order dismissing the fifth bankruptcy case with prejudice). This case may include some of the ingredients of *Bright*, *Pinetree*, and *Steeley*, but all three of those cases involved much worse facts. The Debtors' irregularities in this case, as reflected in the record at the preliminary hearing, do not provide cause for the equitable remedy of retroactively annulling the automatic stay.

Bankruptcy can be complicated or confusing for the typical debtor, which can cause small irregularities even for debtors with the utmost good faith and candor. Today's bankruptcy process is the result of over a century of policy-oriented legislation undergirded by common law concepts of notice and due process, all designed to grant a fresh start to the honest but unfortunate debtor in exchange for equitable distribution of assets to creditors. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64 (2006); *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Debtors sometimes make honest mistakes in their bankruptcy paperwork, correctable as a matter of course. *See, e.g.*, Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."). Debtors occasionally need a second chance with bankruptcy itself after their first case does not succeed, and are granted the full benefits and protections of the Bankruptcy Code with exceptions in certain circumstances carefully crafted by Congress. *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991); *see also, e.g.*, 11 U.S.C. § 362(c)(3)–(4). Debtors occasionally file cases where venue is improper, but unless venue irregularities are raised by motion or become obvious to the Court, the Bankruptcy Code does

---

[6] Venue is proper in the district where the debtor's "domicile, residence, principal place of business in the United States, or principal assets in the United States" were located for the 180 days before the petition date. 28 U.S.C. § 1408(1). An individual debtor's place of employment is not his "principal place of business" and is thus irrelevant to venue. *Blagg v. Miller (In re Blagg)*, 223 B.R. 795, 802 (B.A.P. 10th Cir. Okla. 1998) ("We . . . agree with the essentially universal position that place of employment is not relevant to the question of venue.").

not require that venue be proven by each debtor in each case. Reasonably explained irregularities, therefore, do not necessarily indicate bad faith on the part of the debtor.

For example, Curtis' explanation for filing this case in the Northern District of Texas rather than the Eastern District of Texas is, on its face, quite reasonable even if legally improper. His prior case was filed in the Sherman division of the Eastern District of Texas, which is served by the bankruptcy clerk's office in Plano, Texas. The § 341 meeting and any hearings conducted in Curtis' case were to take place in Plano. Assuming that Curtis lives in Collin County and commutes to Dallas each day for work, as many do,[7] it would not be unreasonable, without more, for Curtis to find it more convenient to pursue a bankruptcy case in the Dallas division of the Northern District of Texas.[8]

The Debtors' most serious transgression was their failure to disclose Beverly's prior bankruptcy case. "Candor, accuracy and integrity are required of a debtor in bankruptcy." *In re Bennett*, 126 B.R. 869, 875 (Bankr. N.D. Tex. 1991) (Akard, J.). Both Debtors electronically signed the petition in this case beneath the following statement: "I declare under penalty of perjury that the information provided in this petition is true and correct." Despite this, the second page of the petition omits Beverly's prior case in a list of all bankruptcy cases filed by the Debtors in the prior eight years. Surely both Debtors knew about Beverly's bankruptcy case dismissed fewer than two months before, and certainly both Debtors had a responsibility to ensure that the petition was "true and correct."

A voluntary petition in an individual case is not a voluminous or impenetrable document, and it is quite unusual for these two Debtors to fail to notice an omission that should be obvious to either. The current version of Form B 1, the model voluntary bankruptcy petition, is no more inscrutable than (and at least as financially consequential as) an individual income tax return. Before electronically signing the

---

[7] Collin County is one of thirteen counties in the Dallas-Fort Worth-Arlington, TX Metropolitan Statistical Area. Office of Mgmt. & Budget, Exec. Office of the President, OMB Bull. No. 13-01, Revised Delineations of Metropolitan Statistical Areas, Micropolitan Statistical Areas, and Combined Statistical Areas, and Guidance on Uses of the Delineations of These Areas, at 29 (2013). A Metropolitan Statistical Area is an urbanized core area plus adjacent territory with "a high degree of social and economic integration with the core as measured by commuting ties." *Id.* at 2. Collin County is one of four core counties in the Dallas-Plano-Irving, TX Metropolitan Division. *Id.* at 22, 29.

[8] For clarity, venue was not at issue in this contested matter, and the Court does not rule on whether venue was proper here. No party has filed a motion under Fed. R. Bankr. P. 1014(a)(2) seeking such a determination.

petition, each of the Debtors needed to review little more than the accuracy of their names, their address, and their list of prior bankruptcy cases.

But, as Debtors' counsel pointed out at the preliminary hearing, Beverly filed the motion seeking dismissal from this joint case before AH4R filed the Motion. Furthermore, AH4R has not explained why it was prejudiced by the omission of Beverly's prior case on the Debtors' joint petition or by the fact that this was filed as a joint case.

## IV. CONCLUSION

For the reasons explained in this Memorandum Opinion and Order, the Motion cannot be granted on the evidence presented at the preliminary hearing. AH4R shall have the opportunity to put on whatever evidence it wishes at a final evidentiary hearing to be held as soon as practicable, as will Curtis. The Court finds that there is a reasonable likelihood that Curtis will prevail at the conclusion of the final hearing on the Motion. Therefore, the automatic stay shall remain in effect pending the conclusion of the final hearing on the Motion.

Counsel for AH4R is directed to (i) immediately confer with Curtis' counsel to obtain a joint time estimate for a final hearing on the Motion, (ii) thereafter contact the Court's courtroom deputy for a final hearing date on the Motion, and (iii) thereafter give notice to all appropriate parties of the final hearing date and time.

**SO ORDERED.**

### END OF MEMORANDUM OPINION AND ORDER ###